UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCISCO PAGAN, | |
| Plaintiff, | CIVIL ACTION NO. 3:22-cv-01420 |
| v. | (SAPORITO, M.J.) |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

# MEMORANDUM

This fee-paid federal civil rights action commenced in state court when the incarcerated plaintiff, Francisco Pagan, appearing through counsel, filed a writ of summons in the Cumberland County Court of Common Pleas on June 30, 2022. (*See* Doc. 44.) He filed his original verified complaint in the state court on July 9, 2022. (Doc. 1-1; *see also* Doc. 44.) At the time of filing, Pagan was a convicted state prisoner, incarcerated at SCI Camp Hill, a state correctional facility located in Cumberland County, Pennsylvania.

Following service of original process, the action was timely removed to this court by the defendants on September 8, 2022. (Doc. 1.) The plaintiff filed an amended complaint on October 26, 2022, which remains

the operative complaint at this time. (Doc. 26.)

On February 16, 2023, the plaintiff filed a Rule 41(a)(1)(A)(i) notice of voluntary dismissal with respect to his claims against the state department of corrections and several individual defendants employed by it. (Doc. 41.) The defendants who remain are Jessamine Healthcare Inc. d/b/a Wellpath LLC f/k/a Correct Care Solutions LLC (collectively, "Wellpath"), a for-profit business entity that contracted with the state department of corrections to provide medical and health services for inmates at SCI Camp Hill and other state correctional facilities, and Dr. Voorstad, a physician employed by Wellpath to provide prison medical services at SCI Camp Hill.

These remaining defendants have moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. (Doc. 30.) That motion is fully briefed and ripe for decision. (Doc. 31; Doc. 36.)

I. FACTS ALLEGED IN THE AMENDED COMPLAINT

In July 2021, Pagan was an inmate at SCI Camp Hill. While he was lifting weights at the gym, he felt a "pop" in his chest. He immediately requested to see prison medical staff.

The very next day, Pagan was seen by a nurse, who informed Pagan that there was nothing the nurse could do—Pagan must first see a doctor, which required an appointment. The nurse scheduled an appointment for Pagan to be seen by a physician, Dr. Voorstad. But the appointment was cancelled and rescheduled approximately six times.

After several cancellations, approximately six or seven weeks after he was first injured, Pagan was finally able to be seen by Dr. Voorstad. But despite Pagan's insistence that he had a torn pectoral muscle and needed an MRI and X-rays, Dr. Voorstad told Pagan that he needed to do physical therapy.

A few weeks later, Pagan was seen by a physical therapist. Pagan informed the physical therapist that he needed an MRI, rather than physical therapy. The therapist agreed and scheduled an appointment for Pagan to see Dr. Voorstad, who needed to approve the request for an MRI.

Another few weeks later, Pagan was seen by Dr. Voorstad, who now agreed that Pagan should receive an MRI. Pagan then underwent an MRI at SCI Benner Township.

A few weeks after undergoing this diagnostic imaging, Pagan requested the results from medical. At medical, he was told that the MRI

showed inconclusive results. Because the results were inconclusive, Pagan was required to see Dr. Voorstad again for approval to receive another MRI.

A few weeks later, Pagan saw Dr. Voorstad, who approved additional MRI imaging. Shortly after this, however, Pagan contracted COVID-19 and was required to quarantine for 14 days.

After he exited quarantine, Pagan underwent MRI imaging, which this time revealed that his pectoral muscle was torn. A few weeks after receiving this result, Pagan was seen by an outside orthopedic surgeon, who informed Pagan that he had waited too long since the injury to perform surgery, and if he performed surgery now, it would cause more damage.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial

plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. DISCUSSION

Pagan has brought this federal civil rights action under 42 U.S.C.

§ 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

The plaintiff's counseled amended complaint is organized into two counts, each of which is asserted against both Wellpath and Dr. Voorstad. Count I asserts a § 1983 claim based on the defendants' alleged deliberate

indifference to Pagan's serious medical needs, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. In particular, the plaintiff seeks to hold the defendants liable for misdiagnosis of Pagan's torn pectoral muscle and for various delays in medical treatment that prevented Pagan from receiving surgery to properly treat that injury. Count II asserts a state-law tort claim for negligence based on the same facts.

### A. § 1983 Claim Against Wellpath

The defendants have moved to dismiss the plaintiff's § 1983 claim against Wellpath for failure to allege sufficient facts to establish its personal involvement in allegedly unconstitutional conduct. The amended complaint alleges no facts regarding Wellpath, except to allege its role and its responsibilities as a contracted vendor providing medical and health services to SCI Camp Hill and other state correctional facilities, and as Dr. Voorstad's employer.

"[A]lthough a private corporation offering medical services cannot be held liable for an alleged § 1983 violation under a theory of *respondeat superior*, it can be held liable for a policy or custom that demonstrates deliberate indifference." *Francis v. Carroll*, 659 F. Supp. 2d 619, 625–26

(D. Del. 2009) (internal quotation marks omitted). *See generally Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (applying *Monell* to a private company providing medical services to inmates). To prevail on his § 1983 claims against Wellpath, the plaintiff must establish that there was a relevant Wellpath policy or custom, and that this policy or custom caused the constitutional violation for which he seeks relief. *See Natale*, 318 F.3d at 583–84. But the amended complaint fails to allege any such corporate policy or custom with respect to Wellpath. Indeed, the amended complaint alleges only that Wellpath employed Dr. Voorstad and was ultimately responsible for providing competent medical services to state inmates under a contract with the state department of corrections. The facts alleged in support of Pagan's § 1983 claim contain no reference whatsoever to any policies or customs by Wellpath, a corporate entity.

Accordingly, the plaintiff's § 1983 claim against Wellpath, alleging vicarious liability for its employees' deliberate indifference to the plaintiff's serious medical needs, in violation of his Eighth Amendment

rights, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### B. Delayed Medical Treatment Claim Against Dr. Voorstad

The plaintiff seeks to hold Dr. Voorstad liable under § 1983 for the cumulative delays he experienced in the course of his medical treatment, which prevented Pagan from timely receiving surgery to properly treat his torn pectoral muscle, which the plaintiff contends constitutes deliberate indifference to his serious medical needs, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. The plaintiff alleges that he experienced a delay of several weeks due to the repeated cancellation and rescheduling of his initial appointment with Dr. Voorstad, additional weeks-long delays between other appointments with Dr. Voorstad and other medical providers, a botched MRI that required him to wait several more weeks to receive a second MRI, and a 14-day period of quarantine when Pagan contracted COVID-19.

It is well established that "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must

be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986).

The complaint fails to allege any personal involvement whatsoever by Dr. Voorstad in any of the foregoing delays. Dr. Voorstad is not alleged to have personally handled the scheduling of Pagan's appointments—either with himself or with other medical providers—nor is he alleged to have conducted the botched MRI, nor is he alleged to have caused Pagan to contract COVID-19 or to be quarantined for it.

Accordingly, the plaintiff's § 1983 claim against Dr. Voorstad, to the extent it is based on these delays in medical treatment that allegedly prevented Pagan from timely receiving surgery to properly treat that injury, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### C. Misdiagnosis Claim Against Dr. Voorstad

The plaintiff seeks to hold Dr. Voorstad liable under § 1983 for his failure to properly diagnose and provide timely medical treatment for Pagan's torn pectoral muscle, which the plaintiff contends constitutes deliberate indifference to his serious medical needs, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. The plaintiff alleges that, despite his insistence at his first visit that he had a torn pectoral muscle and needed an MRI or X-rays, Dr. Voorstad referred him to physical therapy instead. After seeing the physical therapist and being referred back to Dr. Voorstad, Dr. Voorstad finally approved an MRI. Due to an inconclusive result on his first MRI scan, Pagan was required to see Dr. Voorstad again to obtain approval for another MRI. When that second MRI was done, it revealed a torn pectoral

muscle—as Pagan had expected from the outset—but an outside orthopedic surgeon then advised him that it was now too late for surgical treatment due to the extensive delays.

To state a cognizable constitutional claim for improper medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious." *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978).

With respect to the serious medical need prong of the *Estelle* standard, a serious medical need exists if failure to treat such condition would constitute a "denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 825.

> [T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences. The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."

*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

With respect to the deliberate indifference prong of the *Estelle* standard, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients. *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). "[M]ere allegations of malpractice do not raise issues of constitutional import." *Lanzaro*, 834 F.2d at 346. A mere difference of opinion between the prison medical staff and the inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *Id.* at 346; *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Moreover, a prison doctor's use of a different treatment regimen than that prescribed by a private physician does not amount to deliberate indifference. *Johnson v. Cash*, 557 Fed. App'x 102, 104 (3d Cir. 2013) (per curiam) (citing *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977)). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's

constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). The key question is whether the defendant provided the inmate with some type of treatment, regardless of whether it is what the plaintiff desires. *Farmer*, 685 F. Supp. at 1339. The complaint must allege that the defendant "knows of the prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment." *Lopez v. Corr. Med. Servs., Inc.*, 499 Fed. App'x 142, 146 (3d Cir. 2012).

Here, despite Pagan's insistence at the outset that he had a torn pectoral muscle and required medical imaging, Dr. Voorstad opted to treat the injury conservatively with physical therapy before later agreeing to authorize an MRI. That MRI confirmed that Pagan did indeed have a torn pectoral muscle, but the lapse of time had eliminated surgery as a viable treatment option by the time Pagan was able to be seen by an orthopedic surgeon. Pagan does not, however, allege that he was denied treatment altogether for his injury, but merely that he did not receive the treatment that he desired when he desired it, or that would have been recommended by an orthopedic surgeon if he had seen the specialist at

an earlier date. Indeed, as the Supreme Court of the United States has expressly recognized, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment," and thus "[a] medical decision not to order an [MRI] . . . does not represent cruel and unusual punishment," but rather, "[a]t most it is medical malpractice." *Estelle*, 429 U.S. at 107. Pagan has failed to allege anything more than a difference of opinion between a prison doctor and the inmate or an outside physician with respect to the preferred course of treatment for his injury. *Cf. Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (nurse's misdiagnosis of inmate's appendicitis as a pulled muscle and her decision not to elevate his condition based on her opinion that it was not severe may have constituted medical malpractice, but not deliberate indifference to serious medical needs); *Weigher v. Prison Health Servs.*, 402 Fed. App'x 668, 670 (3d Cir. 2010) (per curiam) ("[A] claim of misdiagnosis would sound in negligence as a malpractice suit, and does not constitute deliberate indifference."); *Mori v. Allegheny Cnty.*, 51 F. Supp. 3d 558, 567 (W.D. Pa. 2014) ("[M]ere negligent misdiagnosis or treatment is not actionable because medical malpractice is not a

constitutional violation.").

Accordingly, the plaintiff's § 1983 claim against Dr. Voorstad, to the extent it is based on the doctor's misdiagnosis and inadequate medical treatment of Pagan's injury, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### D. Leave to Amend

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Based on the facts alleged in the amended complaint, the amended complaint will be dismissed *without* leave to amend, as it is clear that any further amendment would be futile.

### E. State-Law Tort Claims

In addition to the federal civil rights claim set forth in Count I, the amended complaint has asserted a state-law tort claim for negligence in

Count II. But where a district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over state-law claims. 28 U.S.C. § 1367(c)(3). Whether the court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state-law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. Therefore, upon dismissal of the plaintiff's federal civil rights claims, the remaining state-law claims will be remanded to the Court of Common Pleas of Cumberland County, Pennsylvania, for further proceedings. *See Cohill*, 484 U.S. at 357.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss (Doc. 30) will be

granted, the plaintiff's federal civil rights claims will be dismissed, and the plaintiff's state-law tort claims will be remanded to state court for further proceedings.

An appropriate order follows.


Dated: September 14, 2023         *s/Joseph F. Saporito, Jr.*
                                  JOSEPH F. SAPORITO, JR.
                                  United States Magistrate Judge